**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AKANBI NIA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL DAVIS, *et al.*,<br><br>Defendants. | : | Case No. 2:26-cv-490<br><br>District Judge Michael H. Watson<br>Magistrate Judge Kimberly A. Jolson |

# REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Ohio State Penitentiary, has filed a *pro se* Complaint and attached Exhibits. (Doc. 1-1; Docs. 1-2, 1-3, 1-4, 1-5, 1-6). In the Complaint, Plaintiff alleges violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and sues Ross Correctional Institution ("RCI")[1] Corrections Officer Michael Davis, Unit Sergeant B. Stamper, Unit Manager Spencer, and Unit Sergeant Mayes in their official and individual capacities under 42 U.S.C. § 1983. (*See* Doc. 1-1). By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. (Doc. 8).

This case is currently before the Court for a *sua sponte* review of the Complaint to determine whether the Complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28

[1] While Plaintiff is currently incarcerated at the Ohio State Penitentiary, all the alleged incidents in his Complaint occurred while he was incarcerated at RCI. (*See* Doc. 1-1 at 3; Doc. 3).

U.S.C. § 1915(e)(2)(B).

## I. LEGAL STANDARD

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke*, 490 U.S. at 328–29; *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton*, 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however,

the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470–71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

## II. ALLEGATIONS

In his Complaint, Plaintiff describes two discrete series of events involving two groups of Defendants: (1) the events occurring in June 2023 through August 2023 involving Corrections Officer Michael Davis and Unit Sergeant B. Stamperand; and (2) the events occurring in June through July 2024 involving Unit Manager Spencer and Unit Sergeant Mayes. (*See generally* Doc. 1-1). Liberally construing Plaintiff's allegations, *see Erickson*, 551 U.S. at 94, the

Complaint can be divided into the June through August 2023 events and the June through July 2024 events.

### A. June through August 2023 Events

Plaintiff alleges that in June 2023,[2] Defendant Davis "gave [him] a threatening ultimatum during a segregation pack-up process" that "Plaintiff had to choose between his clothes and hygiene items or all his paperwork that included his legal documentation and food." (Doc. 1-1 at 4–5). When Plaintiff informed Defendant Davis that he had "an active case before the Ohio Supreme Court with deadlines in place," he asserts Davis told him to "let someone hold his legal work until he got out of segregation, or [Davis] will throw the legal documents in the trash." (*Id.* at 5). Plaintiff states that he gave his legal paperwork to another inmate before he was placed in segregation. (*Id.*). After Plaintiff's release from segregation, he alleges that he "immediately sought to retrieve his legal paperwork" from the other inmate by sending a kite to Defendant Stamper, since the other inmate was housed in another unit that Plaintiff could not "enter without Staff permission." (*Id.*). Plaintiff states that Defendant Stamper did not respond to his kite, leading to his filing an informal grievance. (*Id.*). Plaintiff says that he never received any assistance from Defendant Stamper or "any Staff" in retrieving his legal documents, which led to Plaintiff's failure to timely file and "to seek a Delayed Appeal to the Ohio Supreme Court." (*Id.*).

To support his claims, Plaintiff includes as exhibits a letter from the Supreme Court of Ohio addressed August 17, 2023, that explains Plaintiff had missed the August 14 deadline for appealing a June 29, 2023, Court of Appeals decision and would have to seek a Delayed Appeal.

[2] While Plaintiff states in his Complaint that he was denied access to the courts "[o]n or about September 7, 2023," all the provided exhibits indicate that the events began in June 2023 and extended into August 2023. (Doc. 1-1 at 4; *compare* Doc. 1-2 at 2; Doc. 1-3). Therefore, the Undersigned will assess Plaintiff's claims using those dates.

(*See* Doc. 1-2). Additionally, Plaintiff provides the kites from June 2023 to July 2023 demonstrating several requests for assistance in retrieving his legal paperwork and for law library passes to prepare his motion and brief for the Ohio Supreme Court deadline. (Doc. 1-3 at 2–10). Finally, Plaintiff provides a scan of cancelled law library passes for August 8, 2023, and August 10, 2023, the week his appeal was due. (*Id.* at 11).

Plaintiff also asserts in a single sentence that he is still being denied access to the Courts "as of this filing" because inmates are still having problems "receiving their legal mail to date." (Doc. 1-1 at 5). The Undersigned does not understand him to be raising a "legal mail" claim here. Furthermore, any current issues Plaintiff may be experiencing at Ohio State Penitentiary would not have implications on his denial of access to the courts claim at RCI.

**B. June through July 2024 Events**

Next, Plaintiff alleges that in June 2024,[3] Defendants Spencer and Mayes "violated [his] due process rights and the regulations and procedures established by the Ohio Department of Rehabilitation and Corrections that guide institutional staff by Ohio Administrative Rules and Regulations." (Doc. 1-1 at 5–6). On June 15, 2024, Plaintiff received a Conduct Report, Case No. RCI-24-006265 for alleged violations of "Rule 9.1, possession of, manufacture of, or possession of plans, instructions or formula for making a weapon, ammunition, explosive or incendiary device; and Rule 10.1, unauthorized possession or manufacture of drugs or an other intoxicating substance (i.e. alcohol or hooch)." (*Id.* at 6; *see also* Doc. 1-5 at 2). At the Unit Hearing held on June 17, 2024, Plaintiff "plead not guilty and waived his rights to have a witness on his behalf at the Hearing Officer level" and "thereafter[,] the [Conduct Report] was referred

[3] While Plaintiff does not provide dates in the body of his Complaint, he attaches a Conduct Report in Case No. RCI-24-006265 and subsequent Hearing and Rule Infraction Board Reports that contain dates. (Doc. 1-5 at 2–11). Therefore, the Undersigned will refer to these dates in the analysis of Plaintiff's Complaint.

to the Rule Infraction Board (RIB)." (Doc. 1-1 at 6). Plaintiff asserts that, under the Ohio Administrative Code "that established policies and procedures for the RIB panel review," the RIB has seven days "to hold a hearing which includes weekend[s] after the Unit Hearing." (*Id.*). Otherwise, Plaintiff asserts, "any time after the seven-day period, any further action by the RIB panel is considered a violation of the inmates' due process rights that deprived [him] of his procedural rights during the hearing that resulted in unjust punishment as established by the Ohio Administrative Code." (*Id.*). Plaintiff states that the "RIB record states that the [RIB hearing] was held [past] the established seven-[day] period," but that the "RIB panel attempted to blame [him] for its failure to timely process the [Conduct Report] because Plaintiff asked for a witness." (*Id.*). However, Plaintiff asserts he "clearly at the very beginning" stated he did not want a witness. (*Id.*). Additionally, Plaintiff asserts that the evidence used in Conduct Report, Case No. RCI-24-006265 "was found in the cell's vent that [he] shared with other inmates[;] thereby, it is considered community cohabitation" and therefore a "grievance error to place blame on one inmate over another without firsthand knowledge and or admission by one of the inmates housed in that cell." (*Id.*). Plaintiff contends that "any statement made by an Officer to the contrary [is] misleading to the evidence and facts herein." (*Id.*). Plaintiff reasserts that "Defendants Spencer (Unit Manager) and Mayes (Unit Sergeant) purposefully and intentionally" violated his due process rights. (*Id.* at 7). After Plaintiff appealed his finding of guilt by the RIB hearing and asserted the procedural due process claim, Warden Szoke found no procedural error and affirmed the RIB decision. (Doc. 1-5 at 9). Plaintiff was placed in extended restrictive housing for a year, to be reviewed for release in October 2025. (*Id.* at 23).

Subsequently, Plaintiff claims that the actions of all Defendants meet "both objective and subjective requirements of deliberate indifference, deprivation of [his] basic constitutional

rights, violation of [his] rights that constituted Cruel and Unusual Punishment and a due process violation under the First, Fifth, Eighth and Fourth Amendments . . . ." (Doc. 1-1 at 13). He asserts that he has "no plain, adequate, or complete remedy at law to redress the wrongs described herein" and that he "has been and will continue to be irreparably injured by the conduct of the Defendants that impacts [him] for the rest of his life." (*Id.*).

For relief, Plaintiff seeks compensatory damages in the amount of $150,000.00 against each Defendant, jointly and severally, punitive damages in the amount of $150,000.00 against each Defendant, his costs in this suit, a jury trial, and for any additional relief this court deems just, fair, proper, and equitable. (Doc. 1-1 at 13–14).

## III. ANALYSIS

The Undersigned concludes that Plaintiff's claims should be dismissed.

### A. Plaintiff's Complaint Does Not Raise Eighth and Fourth Amendment Claims

Plaintiff states his claims include deliberate indifference and cruel and unusual punishment in violation of the Eighth Amendment, but his factual allegations, at base, raise a claim of denial of access to the courts in violation of the First Amendment against Defendants Davis and Stamper and a claim for denial of his due process rights in violation of the Fourteenth Amendment against Defendants Spencer and Mayes. (Doc. 1-1 at 5–7). Plaintiff does not state any facts that implicate a humane conditions of confinement claim, *see Farmer v. Brennan*, 511 U.S. 825 (1994), nor any facts implicating a deliberate indifference to serious medical needs claim, *see Estelle v. Gamble*, 429 U.S. 97 (1976). Furthermore, Plaintiff does not state any facts that indicate Defendants enacted "unnecessary and wanton infliction of pain" upon him that would constitute cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Therefore, Plaintiff's factual allegations do not state an Eighth Amendment claim.

Additionally, Plaintiff asserts his factual allegations raise a Fourth Amendment claim. (Doc. 1-1 at 13). To the extent Plaintiff asserts a privacy interest in his cell that would make the search leading to the Conduct Report subject to the Fourth Amendment, the Supreme Court has held that prisoners do not have a privacy interest in their cells; therefore, "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Therefore, Plaintiff's factual allegations do not state a Fourth Amendment claim.

**B. Plaintiff's First Amendment Claim Barred by Statute of Limitations**

Plaintiff's First Amendment denial of access to the courts claim against Defendants Davis and Stamper, which he brings under § 1983, are governed by the two-year statute of limitations found in Ohio Rev. Code § 2305.10. *See Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 937, 939 (6th Cir. 1999) (stating that two-year statute of limitations applies to claims under § 1983).

Although the statute of limitations is normally an affirmative defense raised by defendants in an answer, "if a statute of limitations defense clearly appears on the face of a pleading, the district court can raise the issue *sua sponte*." *Watson v. Wayne Cty.*, 90 F. App'x 814, 815 (6th Cir. 2004) (citing *Pino v. Ryan*, 49 F.3d 51, 53–54 (2d Cir. 1995)); *see also Alston v. Tenn. Dep't of Corr.*, 28 F. App'x 475, 476 (6th Cir. 2002) ("Because the statute of limitations defect was obvious from the face of the complaint, *sua sponte* dismissal of the complaint was appropriate."). Moreover, "[w]here a particular claim is barred by the applicable statute of limitations, it does not present an arguable or rational basis in law or fact and therefore may be dismissed as frivolous under § 1915(e)(2)." *Fraley v. Ohio Gallia Cty.*, No. 97-3564, 1998 WL 789385, at *1 (6th Cir. Oct. 30, 1998).

The alleged conduct underlying Plaintiff's First Amendment denial of access to the courts

claim against Defendants Davis and Stamper would have occurred in June through August 2023. Plaintiff was actively aware of this lack of access at the time as he was requesting aid to recover his legal paperwork and law library access over kites to meet the impending Supreme Court of Ohio deadlines. (*See* Doc. 1-3 at 2–12). Furthermore, Plaintiff received a letter from the Supreme Court of Ohio dated August 17, 2023, informing him that he had missed a filing deadline and would have to file a delayed appeal; this letter would have put him on notice that he had a potential denial of access to the courts claim to pursue. (Doc. 1-2 at 2). By any date the Court can determine as relevant for the statute of limitations, that date would not save this claim because the two-year statute of limitations would have long run before he filed this action regardless. Plaintiff filed his Complaint on April 14, 2026. Depending on the relevant date as explained above, Plaintiff would have had to file his Complaint no later than June 2025, August 2025, or September 2025 (accounting for mailing of the Supreme Court of Ohio letter).

Because it is clear from the face of Plaintiff's Complaint that the statute of limitations for bringing his First Amendment denial of access to the courts claim under § 1983 expired well before Plaintiff filed this action, the Undersigned **RECOMMENDS** his First Amendment denial of access to the courts claim against Defendants Davis and Stamper **be DISMISSED with prejudice** as frivolous under § 1915(e)(2). *Fraley*, 1998 WL 789385, at *1; *Campbell v. Chambers-Smith*, No. 2:21-CV-4055, 2021 WL 4810524, at *2 (S.D. Ohio Oct. 15, 2021) (Watson, D.J.) (dismissing with prejudice when *sua sponte* dismissal based on statute of limitations was proper).

### C. Plaintiff's Fifth and Fourteenth Amendment Due Process Claim Fails to State Claim

Further, Plaintiff fails to state a claim upon which relief may be granted to the extent that he claims he was denied due process in the RIB Hearing being held on the eighth day after the Unit Hearing. The Due Process Clause protects individuals against deprivation of "life, liberty,

or property without due process of law." U.S. CONST. amends. V, XIV. Prisoners subject to disciplinary proceedings, however, are not entitled to the same "full panoply" of due process rights afforded to criminal defendants during trial. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A valid "due process challenge to a prison misconduct conviction depends on whether the conviction[] implicated any liberty interest." *Hubbard v. Theut*, No. 2:19-cv-52, 2019 WL 1198536, at *2 (W.D. Mich. Mar. 14, 2019). Importantly, the Due Process Clause does not protect every change in the conditions of confinement impacting a prisoner. *Id.* (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Rather, "a prisoner is entitled to the protections of due process only when a deprivation 'will inevitably affect the duration of his sentence' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 486–87 (1995)).

Plaintiff has not alleged that the challenged disciplinary sanction resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or in an atypical and significant hardship. The Sixth Circuit has found that confinement in segregation generally does not rise to the level of an atypical and significant hardship except "in extreme circumstances," such as when a prisoner is subject to an excessively long or indefinite administrative segregation. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (quoting *Harden–Bey v. Rutter*, 524 F.3d 789, 791–92 (6th Cir.2008)). *Cf. Harris v. Caruso,* 465 F. App'x. 481, 484 (6th Cir. 2012) (a prisoner's 8-year confinement in segregation was of "atypical duration" and presented a cognizable liberty interest). Assignment to restrictive housing likewise does not implicate a liberty interest. *See Perry v. Erdos*, No. 1:22-cv-178, 2022 WL 2256901, at *3 (S.D. Ohio June 22, 2022), *report and recommendation adopted*, 2022 WL 3083522 (S.D. Ohio Aug. 3, 2022) ("Courts in this District have expressly held that assignment to extended restrictive housing, ODRC's most

restrictive security level, does not implicate a due process liberty interest") (citations omitted). Accordingly, because Plaintiff does not have a protected liberty interest under the circumstances alleged herein, his claims under the Fifth and Fourteenth Amendment's Due Process Clause should be dismissed.

Plaintiff has also not stated a constitutional claim to the extent he has alleged that Defendants Spencer and Mayes wrote a false conduct report against him or failed to adequately investigate. Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g.*, *Reeves v. Mohr*, No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (holding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional right to be free from false accusations"). "A constitutional violation may occur, if as a result of an accusation, the plaintiff was deprived of a liberty interest without due process." *Reeves*, 2012 WL 275166, at *2 (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). However, as noted above, Plaintiff's allegations are insufficient to trigger constitutional concerns because he has not alleged any facts suggesting that the challenged disciplinary action deprived him of a protected liberty interest.

Plaintiff has also failed to state an actionable claim for relief based on his allegations of an inadequate investigation. "There is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011). Furthermore, to the extent that Plaintiff claims that the grievance procedure failed to produce the correct outcome, this cannot give rise to a § 1983 claim because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97–3416, 1998 WL 476247, at *1

(6th Cir. Aug. 03, 1998) (citations omitted). Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson,* 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Therefore, Plaintiff fails to state a claim upon which relief may be granted against Defendants Spencer and Mayes to the extent that he claims they failed to investigate. Accordingly, because Plaintiff fails to allege a protected liberty interest under the Fifth and Fourteenth Amendment, the Undersigned **RECOMMENDS** Plaintiff's Fifth and Fourteenth Amendment due process claim against Defendants Spencer and Mayes **be DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

***

In sum, the Undersigned **RECOMMENDS** the Court **DISMISS with prejudice** Plaintiff's time-barred First Amendment denial of access to the courts claim against Defendants Davis and Stamper as frivolous under § 1915(e)(2). Additionally**,** the Undersigned **RECOMMENDS** that Plaintiff's Fifth and Fourteenth Amendment due process claim against Defendants Spencer and Mayes be **DISMISSED without prejudice** for failure to state a claim**.**

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Court **DISMISS WITH PREJUDICE** Plaintiff's First Amendment time-barred denial of access to the courts claim against Defendants Davis and Stamper as frivolous under § 1915(e)(2).

2. The Court **DISMISS WITHOUT PREJUDICE** Plaintiff's Fifth and Fourteenth Amendment due process claim against Defendants Spencer and Mayes for failure to state a claim upon which relief can be granted. 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b).

Date: August 27, 2026

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

**PROCEDURE ON OBJECTIONS:**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). *See also Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).